# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

**BYRON ALEXANDER, as surviving spouse
And administrator of the estate of DONNA
ALEXANDER, deceased,**

    Plaintiff,

v.                                                                  No. 1:23-cv-02034-STA-jay

**AHAVA HEALTH CARE LLC d/b/a
Adamsville Healthcare and Rehabilitation
and ADAMSVILLE OPERATING GROUP
LLC d/b/a Adamsville Healthcare and
Rehabilitation,**

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Byron Alexander, as the surviving spouse of Donna Alexander ("the Decedent") and the administrator of her estate, filed this action against Defendants AHAVA HC LLC and Adamsville Operating Group LLC based on injuries the Decedent suffered after being sexually assaulted by Terry Wilkerson, an employee of Adamsville Healthcare and Rehabilitation ("Adamsville Healthcare").[1] Plaintiff alleges a claim under the Tennessee Medical Malpractice Act, Tenn. Code Ann. §29-26-115 *et seq.*, a claim for gross negligence and willful, wanton, reckless, malicious and/or intentional misconduct, and a claim for vicarious liability. Jurisdiction is predicated on diversity of citizenship, 28 U.S.C. § 1332.

---

[1] According to the complaint, Ahava Health Care and Adamsville Operating Group operate and/or manage Adamsville Healthcare. (Cmplt. p. 2, ECF No. 1.)

Defendants have filed a motion for summary judgment (ECF No. 67), and Plaintiff has filed a response to the motion (ECF No. 71.) Defendants filed a reply to the response. (ECF No. 73.) Plaintiff then filed a sur-reply without seeking permission to do so. (ECF No. 76.) The unpermitted sur-reply will be stricken and not considered by the Court.

Plaintiff concedes that Defendants are entitled to summary judgment on Plaintiff's claim that Defendants were negligent in failing to sufficiently staff Adamsville Healthcare and Plaintiff's claim that Defendants are vicariously liable for the actions of Wilkerson but requests that this Court deny Defendants' motion for summary judgment for every other claim, *i.e.*, negligent hiring, retention, and supervision and vicarious liability based on the actions of the nursing staff. (Resp. p. 1, ECF No. 72.)

As an initial matter, the Court notes that it has affirmed the Magistrate Judge's order excluding Plaintiff's sole expert, Dr. Johnathan Klein, because he failed to provide sufficient testimony demonstrating knowledge of the standard of care in Adamsville, Tennessee, as is required under the locality rule found in Tenn. Code Ann. § 29-26-115(a)(1). (ECF No. 94.)

Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When deciding a motion for summary judgment, the Court must review all the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

2

When the motion is supported by documentary proof such as depositions and affidavits, the non-moving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Statement of Undisputed Material Facts

Pursuant to the Local Rules of this Court, Defendants have prepared a statement of material undisputed facts (ECF No. 67-3) "to assist the Court in ascertaining whether there are any material facts in dispute." Local Rule 56.1(a). Plaintiff has responded to Defendants' statement and has attached his own statement of facts. (ECF No. 72-4.) Defendants have responded to Plaintiff's statement of facts. (ECF No. 74.)

A fact is material if it "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994), and *Anderson,* 477 U.S. at 247–48). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. For purposes of summary judgment, a party

3

asserting that a material fact is not genuinely in dispute must cite to particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1). Here, as the non-moving party, Plaintiff must respond to Defendants' statement of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." Local Rule 56.1(b). Additionally, Plaintiff may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

If Plaintiff asserts that a genuine dispute of material fact exists, he must support his contention with a "specific citation to the record." Local Rule 56.1(b). If a party fails to demonstrate that a fact is disputed or fails to address the opposing party's statement of facts properly, the Court will "consider the fact undisputed for purposes" of ruling on the motion. Fed. R. Civ. P. 56(e)(2); *see also* Local Rule 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."). Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In the present case, both parties object to certain portions of the opposing party's statement of facts.

The Court finds that there is no genuine dispute as to the following material facts, unless otherwise noted.[2]

On September 26, 2021, the Decedent was sexually assaulted by Terry Wilkerson, an

---

[2] The facts are stated for the purpose of deciding this motion only.

4

employee of Adamsville Healthcare. Wilkerson was employed by Adamsville Healthcare as a member of the housekeeping department. An assault on a resident was not within Wilkerson's job duties. At all relevant times, Adamsville Healthcare had a zero-tolerance policy for abuse of residents by staff. The staff are expected to follow policies and procedures.

Wilkerson was trained on policies regarding abuse and neglect and residents' rights upon hiring and regularly thereafter. Wilkerson was aware that he was not allowed to assault residents of Adamsville Healthcare.

Violation of Adamsville's abuse policy results in termination following an investigation. Wilkerson was terminated for violating the policies regarding abuse in relation to his assault of the Decedent. Wilkerson was convicted of sexual battery by an authority figure, a felony, and was sentenced to three years of incarceration and placed on the sexual offenders' registry.

Wilkerson's assault of the Decedent was the first instance of sexual abuse of a resident by a member of the housekeeping staff at Adamsville Healthcare.

In both his expert report and in his deposition, Dr. Klein failed to set forth any opinion regarding the hiring, supervision, or retention of Wilkerson, including an opinion regarding what the standard of care required concerning his hiring, supervision, and/or retention, that his hiring, supervision, and/or retention deviated from the standard of care, or that this deviation caused or contributed to injury to the Decedent.

In support of his statement of additional facts, Plaintiff has presented a transcribed phone conversation between Cara Sweat, a former employee of Adamsville Healthcare, and Plaintiff's attorney. (ECF No. 72-1.) The attorney, Benjamin J. Miller, has submitted his own declaration that the exhibit is a "true and correct copy of a transcript of a telephone call I had with Cara Sweat on October 30, 2024." (*Id.*) Defendants object to the admission of this exhibit on various grounds.

5

The Court agrees with Defendants that the exhibit is problematic and cannot be used to create a disputed issue of material fact as to whether Defendants should have known that Wilkerson would attack a patient.

Federal Rule of Civil Procedure 56(e) states in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." A court may strike an affidavit, in whole or in part, that does not comply with Rule 56(e). *See Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 667 (6th Cir. 2005). The party submitting the affidavit has the burden "to show circumstances indicating the witness has based the statement on personal knowledge." *Peebles v. A. Schulman, Inc*., 2006 WL 572337, at *7 (M.D. Tenn. Mar. 7, 2006).

Defendants complain that Sweat's statements are not sworn and/or made under penalty of perjury. (ECF No. 73.) They also argue that the statements are inadmissible as hearsay because (1) they were not made while testifying at a trial or hearing; (2) are offered to prove the truth of the matters asserted; and (3) are not excluded definitionally. (*Id.* citing Fed. R. Evid. 801(c)–(d).) While the Court does not disagree with Defendants' arguments, most pertinent to the decision as to whether Sweat's statements are admissible is that they are not relevant to the issue before the Court, *i.e.*, whether Adamsville Healthcare was negligent in its hiring, supervision, and retention of Wilkerson.

First and foremost, the "warnings" that Sweat was supposedly given by her fellow staff members about Wilkerson would not have put Adamsville Healthcare on notice that Wilkerson would attack the Decedent or any other patient. Sweat told Attorney Miller that she had been warned that Wilkerson was "kind of creepy" and "kind of a pedophile or whatnot." (Miller Decl.

6

p. 2, ECF No. 72-1.) He would follow her around when she went outside to take a break. (*Id.*) Sweat commented that Wilkerson did not have to take a break every time she did.³ (*Id.* at p. 5.) All these comments relate to Wilkerson's conduct toward Sweat, a seventeen-year-old co-worker, and not a disabled patient.

Attorney Miller specifically questioned Sweat as to whether she ever saw Wilkerson "do anything inappropriate or anything that was concerning?" (*Id.* at p. 5.) Sweat responded, "No. He would just try his hardest to have a conversation…. I had went (sic) outside and took my break and he had come out there…. And he was like, 'You're very pretty.'" (*Id.* at p. 6.) "But other than just following and lingering around, nothing ever was more than that around me." (*Id.*) After Attorney Miller described the incident giving rise to this lawsuit, Sweat denied ever being warned about Wilkerson and such conduct. ("But nothing like that. No, that is so bad.")

As well as the "warnings" given Sweat not being the type that would have put Adamsville Healthcare on notice of a threat to a patient, the declaration submitted by Attorney Miller lacks indicia of reliability. At various points during the conversation, Attorney Miller coached Sweat on names and details that she had trouble remembering. After Sweat said that she was warned by the person who trained her, Attorney Miller interjected, "And so then was the person who trained you, was it the director of housekeeping?" (*Id.* at p. 3.) In response to Sweat's affirmative answer, Attorney Miller asked, "Any chance it was Trina? Trina Williams?" (*Id.*) Sweat's response to this question is not entirely clear. "Trina was over housekeeping, but Brandy is the one that trained me…. You said Trina and it gave me Brandy for some reason." (*Id.* at p. 4.) In an apparent attempt

---

³ The transcript states "And I mean, 'You don't have to take your break every time I do.' You know?" It is unclear whether Sweat is describing her feelings to Attorney Miller or if she actually made this statement to Wilkerson. This matter could have been clarified in a deposition upon cross-examination.

to clean up the confusion, Attorney Miller asked if the person Sweat was referring to was "Bailey." (*Id*.) Sweat replied that it was not – "It was Brandy Karr." (*Id*.) Attorney Miller then looked at a list and said that Brandy Karr was a CNA.  In response, Sweat said "Oh, sorry. Never mind, then. The one I worked with was in housekeeping." (*Id*.) Miller replied "Well, she could have been." After some confusion, Miller and Sweat eventually agreed that Brandy Karr worked in housekeeping, trained Sweat, and warned Sweat about Wilkerson's "creepy" behavior.

Sweat mentioned during the phone call that the man she was warned about was called "T" or "Big T." (*Id.* at p. 7.)  Again, there is confusion about whether this man was, in fact, Terry Wilkerson. Sweat described the man to Attorney Miller, and he responded, "Yes. That's how he has been described by other people." (*Id*.)  According to Sweat, "I was just trying to make sure I had the right person which then she[4] told me his name was Terry. And a lot of people that were talking to me were calling him Big T. So I had to put some things together with that, too." (*Id*.)

Even if the transcribed phone call is considered by the Court in making its decision on Defendants' motion for summary judgment, at most it shows that Wilkerson took an interest in Sweat, a co-worker, and followed her around and that this was in line with the "creepy" behavior that other staff had noticed. Sweat specifically stated that she never saw Wilkerson do anything that was concerning. Accordingly, the Court finds that Sweat's statements during the phone call with Attorney Miller do not support an inference that Wilkerson ever displayed any behavior that would have led the staff or administration to believe that he would sexually assault a resident, and her statements cannot be used to defeat Defendants' motion for summary judgment.

---

[4] It appears that Sweat is referring to "Brandy Karr" as "she" in this sentence, but it is not clear.

8

Analysis

Defendants contend that they have sufficiently refuted Plaintiff's allegation that they were negligent by hiring, supervising, and retaining the employee who sexually assaulted the Decedent. According to Defendants, Plaintiff is unable to prove the essential elements of his negligence claims because, even if Dr. Klein had not been excluded as an expert, he failed to provide any opinions relative to the standard of care applicable to the hiring, supervision, and retention of a housekeeping employee, including an opinion that Defendants deviated from the standard of care in their hiring, supervision, and/or retention of Wilkerson or that the nursing staff deviated from the standard of care such that Adamsville Healthcare is vicariously liable for the actions of Wilkerson.

Plaintiff acknowledges that, without the expert opinion of Dr. Klein, he cannot establish that Defendants were negligent in failing to develop and implement an effective plan for monitoring the Decedent, failing to take her for an examination and a rape kit, and failing to keep her safe because these claims require expert proof. (Resp. p. 4, ECF No. 72.)

However, Plaintiff contends that Sweat's statements support an inference that Wilkerson "demonstrated concerning behavior and harassment prior to the sexual assault of [the Decedent]" and that Sweat's supervisor knew of this behavior and took no action against Wilkerson (*id.* at p. 2), which would support his common law negligence claims. To the contrary, as discussed above, Sweat specifically stated that she had never been warned about any conduct by Wilkerson similar to his actions giving rise to this lawsuit. Instead, his "creepy" behavior seems to have been directed toward Sweat, his co-worker. Therefore, even if the Court considers Sweat's statements, they do

not create a disputed issue of fact as to whether Defendants negligently hired, supervised, and/or retained Wilkerson.[5]

Defendants are also entitled to summary judgment on Plaintiff's remaining claim – vicarious liability based on the actions of the nursing staff. Plaintiff points to Dr. Klein's testimony that the nursing staff breached the standard of care for nurses. However, as previously noted, he has been excluded as an expert witness. Next, Plaintiff attempts to rely on the doctrine of *res ipsa loquitur*. The Court rejected Plaintiff's use of that doctrine in the order affirming the decision of the Magistrate Judge excluding Dr. Klein as an expert witness. (ECF No. 94.)

In addition to the reasons previously given by the Court as to why *res ipsa* is not applicable to the facts of this case, the Court also notes that "the instrumentality" of the Decedent's injury (Wilkerson) was not in Defendants' exclusive control. Somewhat surprisingly, Plaintiff has submitted the report of Stephen Bills, M.D., Defendant's expert, in support of his response to Defendants' motion. (ECF No. 72-2.) Dr. Bills clarified that Wilkerson violated the Decedent's right to be free from abuse and not Adamsville Healthcare. (*Id.* at p. 3.) Holding the facility responsible for Wilkerson's criminal actions "would require one-to-one continuous monitoring for all residents in the long-term care setting or clairvoyance to know when intervention against a rogue act is necessary, neither of which is required under the standard of care." (*Id.*)

Defendants cite *Cordell v. Cleveland Tenn. Hosp., LLC*, 544 S.W.3d 331 (Tenn. Ct. App. 2017), to refute Plaintiff's argument that expert proof is not required to establish that an employee's sexual assault of a patient is a deviation from the standard of care. Defendants correctly point out that the issue presented in this case is not whether Wilkerson's assault of the Decedent

---

[5] Another employee of the facility, Kayla Shreve, testified in her deposition that she had never noticed anything about Wilkerson that concerned her and no one had ever said anything to her about Wilkerson that concerned her. (Shreve Depo. p. 1, ECF No. 72-3.)

was a deviation from the standard of care; Plaintiff concedes that Defendants are not vicariously liable for Wilkerson's intentional act. Instead, the question is whether the monitoring of the Decedent by the facility and its staff complied with the standard of care.

*Cordell* also involved the sexual assault of a patient by a staff member, and that Court explained that an allegation of failure to provide "appropriate supervision and nurse monitoring," as opposed to the assault itself, [6] must be proven by expert testimony. *Id.* at 333, 335. Because negligence claims against health care provider employers such as Adamsville Healthcare as to their hiring, supervision, training, or retention of an employee are health care liability claims they require expert testimony, which Plaintiff does not have. Thus, Plaintiff cannot show a breach of the standard of care which is an essential element of his claim.

Plaintiff has pointed to nothing in the record to refute Defendants' statement of facts showing that they were not negligent in the hiring, supervision, or retention of Wilkerson and that they are not vicariously liable for any actions or inactions on the part of the nursing staff. Accordingly, Defendants are entitled to judgment as a matter of law, and their motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: February 11, 2025.

---

[6] *See Cordell*, 544 S.W.3d at 340 ("[W]e fail to see how a defendant's alleged rape of a patient is related to the provision of, or failure to provide, health care services."); *Lacy v. Mitchell*, 541 S.W.3d 55 (Tenn. Ct. App. 2016) (finding that a chiropractor's act of striking patient in the back as she was leaving her appointment was not be related to the provision of health care services). Thus, expert testimony was not needed to prove the injury.